UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

LOREN TAYLOR and SAGE TAYLOR, husband and wife,

      Plaintiffs,

    v.

1-800-GOT-JUNK?, LLC, a Delaware limited liability company,

      Defendant.

CASE NO. C08-1499-JCC

ORDER

This matter comes before the Court on Plaintiffs' Motion for Partial Summary Judgment Determining Applicable Law and Dismissing Affirmative Defenses Two and Three (Dkt. No. 13), Defendant's Response (Dkt. No. 17), and Plaintiffs' Reply (Dkt. No. 19); and Defendant's Cross Motion for Summary Judgment (Dkt. No. 18), Plaintiffs' Response (Dkt. No. 21), and Defendant's Reply (Dkt. No. 22). The Court has carefully considered these documents, their supporting declarations and exhibits, and the balance of relevant materials in the case file, and has determined that oral argument is not necessary. For the reasons explained below, the Court finds and rules as follows.

ORDER – 1

## I. BACKGROUND

This action arises out of a franchise agreement entered into between Plaintiffs and Defendant in 2006. Defendant franchisor, 1-800-Got-Junk?, LLC ("Got Junk"), is a Delaware corporation that is headquartered in Vancouver, B.C., Canada. (Compl. ¶ 6 (Dkt. No. 1 at 2).) Got Junk sells franchises for junk removal and oversees their operation throughout the United States. (*Id.* ¶ 3.) Plaintiffs Loren and Sage Taylor (the "Taylors") are Oregon residents who purchased and attempted to operate a Got Junk franchise in southern Oregon. (*Id.* ¶¶ 4, 6.)

In early 2006, the Taylors purchased a franchise from Got Junk covering a defined territory in southern Oregon. (*Id.* ¶ 23.) The franchise agreement stated that it "shall be construed and interpreted according to the laws of the State of Washington," and that the "U.S. District Court in Seattle . . . shall have exclusive jurisdiction to entertain any proceeding in respect of this Agreement." (Franchise Agreement § 21.12 (Dkt. No. 15-3 at 22).) The negotiations and meetings between the Taylors and Got Junk representatives occurred over the phone, via email, and in person at Got Junk's corporate headquarters in British Columbia. (*See* Herold Decl. ¶ 2 (Dkt. No. 18-3 at 1–2); Homenick Decl. ¶ 6 (Dkt. No. 18-2 at 4).) Soon after purchasing the franchise, the Taylors encountered serious difficulties in operating their junk removal business in portions of the franchised territory. (*See* Compl. ¶¶ 25–29 (Dkt. No. 1 at 5–6).) For example, the Taylors learned that a local junk hauler in their territory held an exclusive agreement with Jackson County that precluded other commercial haulers, such as the Taylors, from using the landfill and transfer station. (*Id.* at ¶ 25.) The Taylors were also precluded from operating their business in Josephine County due to similar exclusive agreements with existing waste management service providers. (*Id.* ¶ 28.) These local exclusive agreements effectively prevented the Taylors from operating their franchise, and in the fall of 2006, the Taylors ended junk removal operations. (*Id.* ¶¶ 34–35.)

Thereafter, a dispute arose between the parties. The Taylors claimed that Got Junk should have known that they may not be able to operate in portions of the franchise territory. (Homenick Decl. ¶ 10

ORDER – 2

(Dkt. No. 18-2 at 5).) Got Junk asserted that it had no knowledge of any local regulatory or other conditions that would preclude the Taylor's operation. (*Id.*) Got Junk also pointed to its offering circular,[1] which provided:

> You will be required to research and to follow all pertinent local and federal laws and regulations specific to the junk hauling and removal industries . . . . We urge you to make inquiries about laws that may be applicable to your Franchised Business. We have not determined the licensing requirements to your proposed territory, or whether it is possible to obtain necessary licenses. You are solely responsible for determining licensing requirements in your proposed territory before you sign the franchise agreement.

(Offering Circular 2 (Dkt. No. 15-2 at 6).) In an attempt to settle the dispute, Got Junk offered to release the Taylors from their obligations under the franchise agreement if they would release all claims against Got Junk. (Herold Decl. ¶ 3 (Dkt. No. 18-3 at 2).) The Taylors proposed a counteroffer, seeking to recover all sums paid to Got Junk in purchasing the franchise. (*Id.* ¶ 4.)

After several negotiations, the parties agreed to resolve the dispute through a settlement, which was documented by three separate agreements. (*Id.*) First, the parties agreed to terminate the franchise agreement, and in exchange for a refund of $20,000, the Taylors agreed to release Got Junk from all claims. (Termination & Release Agreement (Dkt. Nos. 18-3 at 4 & 15-6 at 2).) Second, the parties entered into a consulting agreement under which Got Junk paid the Taylors $5,000 in exchange for a report detailing their experiences with local governmental authorities in attempting to operate their franchise. (Consulting Agreement (Dkt. No. 18-3 at 5).) Third, the Taylors requested and received a right of first refusal to buy back their franchise territories in the event that Got Junk resolved the problems the Taylors had experienced there. (Right of First Refusal (Dkt. No. 18-3 at 6–9).) The Taylors negotiated the settlement themselves and apparently were not represented by counsel. (Pl. Reply 8 (Dkt. No. 19).)

In October 2008, the Taylors filed this action, alleging claims for breach of contract, violations of Washington's Franchise Investment Protection Act ("FIPA") and Consumer Protection Act,

---

[1] The offering circular provided certain disclosures to the franchisee about the franchisor and its system as mandated by the Oregon Franchise Act. (*See* Homenick Decl. ¶¶ 3–7 (Dkt. No. 18-2 at 2–4).)

ORDER – 3

misrepresentation, and negligent infliction of emotional distress. (*See* Compl. ¶¶ 36–69 (Dkt. No. 1 at 7–12).) In its Answer, Got Junk raised a number of affirmative defenses, arguing that the Taylor's claims have been released by the parties' settlement agreement and that FIPA's provisions do not apply to the instant dispute. (Ans. ¶¶ 85–86 (Dkt. No. 6 at 7).) The Taylors now move for partial summary judgment to dismiss these affirmative defenses raised by Got Junk. (Pl. Mot. 17 (Dkt. No. 13).) Got Junk brings a cross-motion for summary judgment, arguing that FIPA does not apply to the instant dispute and the parties' settlement agreement precludes the Taylors' claims. (Def. Mot. 2 (Dkt. No. 18).)

## II. LEGAL STANDARD

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). In determining whether an issue of fact exists, the Court must view all evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986); *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). A genuine issue of material fact exists where there is sufficient evidence for a reasonable factfinder to find for the nonmoving party. *Anderson*, 477 U.S. at 248. The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52. The moving party bears the initial burden of showing that there is no evidence which supports an element essential to the nonmovant's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the movant has met this burden, the nonmoving party then must show that there is a genuine issue for trial. *Anderson*, 477 U.S. at 250. If the nonmoving party fails to establish the existence of a genuine issue of material fact, "the moving party is entitled to judgment as a matter of law." *Celotex*, 477 U.S. at 323–24.

## III. ANALYSIS

The thrust of the Taylors' lawsuit is that Got Junk should have known and disclosed the potential existence of the local restrictions that ultimately prevented them from operating their franchise. (*See*

ORDER – 4

Compl. ¶¶ 21–23 (Dkt. No. 1 at 4–5).) The Taylors do not dispute the existence of a settlement agreement and release of claims between the parties. (*See* Taylor 2nd Decl. ¶¶ 4–6 (Dkt. No. 20 at 2).) Instead, the Taylors' motion for partial summary judgment essentially seeks to void the parties' settlement agreement by invoking FIPA's anti-waiver provision, (Pl. Mot. 2 (Dkt. No. 13)), which invalidates a release of FIPA claims unless the franchisee is represented by independent counsel, *see* WASH. REV. CODE § 19.100.220(2). The Taylors assert that the settlement and release is invalid and does not bar the instant suit because they were not represented by counsel when they negotiated it. (Pl. Reply 8 (Dkt. No. 19).) In its motion, Got Junk seeks a determination that FIPA does not apply, and therefore, the parties' settlement and release should be enforced to preclude this action. (Def. Mot. 20 (Dkt. No. 18).) The dispositive issue in this case therefore turns on whether FIPA's anti-waiver provision applies. If it does, then the settlement and release would be invalid since the Taylors were not represented by counsel at the time of the agreement. If it does not apply, then the settlement operates to release the Taylors' claims and bar the instant suit.

As a threshold matter, the Court must first determine what law applies to this dispute. Where, as here, the district court's jurisdiction is based on diversity, the court must apply the choice of law rules of the state in which it sits, *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941), which in this case is Washington. Washington courts give effect to an express choice of law clause so long as applying it does not violate a fundamental public policy of the forum state. *McGill v. Hill*, 644 P.2d 680, 681 (Wash. Ct. App. 1982). Here, the parties' franchise agreement expressly states that it "shall be construed and interpreted according to the laws of the State of Washington." (Franchise Agreement § 21.12 (Dkt. No. 15-3 at 22).) Because the franchise agreement also selects Washington as the forum for all disputes, the parties' chosen law is the same as their chosen forum state. (*See id.*) Indeed, Got Junk's offering circular reiterates, in bold capital letters, "THE FRANCHISE AGREEMENT STATES THAT WASHINGTON LAW GOVERNS THE AGREEMENT." (Offering Circular (Dkt. No. 15-2 at 3).) The Court must therefore give effect to the parties' choice of law, and apply Washington law to this dispute.

ORDER – 5

The fact that Washington law applies does not, however, necessarily mean that FIPA's protections apply to the parties' franchise agreement. FIPA, by its own terms, contains territorial limitations on the scope of its application. The plain language of FIPA's registration and anti-fraud provisions both limit claims to those based on conduct occurring "in this state." WASH. REV. CODE §§ 19.100.020, 19.100.070. Under FIPA, an offer to sell or the sale or purchase of a franchise occurs "in this state" when (a) an offer is accepted or directed to a person in Washington, (b) an offer originates from Washington and violates the laws of the state in which the offer is received, (c) the offeree or purchaser is a resident of Washington, or (d) the franchise business offered or sold is to be operated, at least partly, in Washington. WASH. REV. CODE § 19.100.020(2), (3). Here, there is no evidence that any aspect of the parties' relationship was directed at or occurred in Washington, and the Taylors make no attempt to argue to the contrary.

FIPA's legislative history confirms that its language defining conduct "in this state" was intended to provide a territorial limitation on the scope of the Act. When FIPA was initially enacted, it did not contain any language defining what constituted conduct occurring "in this state." *See* Franchise Investment Protection Act, ch. 252, § 1, 1971 Wash. Sess. Laws, Ex. Sess. Thereafter, commentator Professor Donald Chisum noted that the failure to adequately define "in this state" created an unfortunate ambiguity over FIPA's coverage. Donald S. Chisum, *State Regulation of Franchising: The Washington Experience*, 48 WASH. L. REV. 291, 337–38 (1973). Professor Chisum suggested that the phrase "in this state" should be defined to conform to California's Franchise Investment Law, which he noted, "contains an adequate definition of the key phrase 'in this state' which carefully spells out the territorial coverage of the law . . . ." *Id.* at 337. When FIPA was amended in 1991, the legislature apparently responded to this critique and inserted a specific definition for what constitutes conduct "in this state." *See* S.B. 5256, 1991, 52nd Leg., Reg. Sess. (Wa. 1991). That now-codified definition is substantially similar to the provision of California's law. *Compare* WASH. REV. CODE § 19.100.020(2), (3), *with* CAL. CORP. CODE § 31013. This amendment demonstrates a clear intent to limit the territorial coverage of the Act to specific

ORDER – 6

conduct that can be said to occur "in this state."

Because FIPA contains a territorial restriction on its application, the issue in this case is whether such a limitation operates to preclude coverage when the parties have stipulated that Washington law governs their dispute. The Fourth and Seventh Circuits have addressed this issue and both have found that a specific territorial limitation on the application of a state law must be given effect even where the parties contractually agree that the law of that state applies. *See Cromeens, Holloman, Sibert, Inc. v. AB Volvo*, 349 F.3d 376, 386 (7th Cir. 2003); *Peugeot Motors of Am., Inc. v. E. Auto Distrib., Inc.*, 892 F.2d 355, 358 (4th Cir. 1989). In *Peugeot Motors*, the franchisee-dealer brought suit alleging that Peugot's termination of their agreement, which was "governed by the laws of the State of New York," had violated New York's regulatory scheme. 892 F.2d at 356–57. The franchisee conducted no business in New York and was not registered as a dealer under New York law. *Id.* The Fourth Circuit first noted that the New York regulations under which the franchisee sought relief limited their application to conduct occurring "in this state." *Id.* at 358. The court then found that, since the franchisee had never conducted business in New York, "the two New York regulatory schemes by their own terms do not apply to the dispute . . . ." *Id.* The court instead applied New York common law because the "explicit geographic limitations" in the distribution statutes precluded their application. *Id.*

In *Cromeens*, the plaintiffs were franchisee-dealers of Samsung products located in Texas, Maine, Montana, New York, and Canada. 349 F.3d at 385. The parties' franchise agreements contained a choice of law provision stating that their contracts would be "construed and interpreted in accordance with the law of the State of Illinois." *Id.* at 384–85. After Samsung terminated their franchise agreements, the franchisees sued in Illinios, claiming that the Illinois Franchise Dealer Act ("IFDA") applied to prohibit termination of their agreements without good cause. *Id.* at 384. By its own terms, however, the IFDA only applied to franchises located within Illinois. *Id.* at 385. Nevertheless, the franchisees argued that their "choice-of-law provision requires the application of the substantive portions of the IFDA to the agreements but not the limitations related to territorial scope[.]" *Id.* The Seventh Circuit directly rejected

ORDER – 7

this argument, "The plain language of the Illinois law that the Samsung Dealers seek to apply excludes those same dealers from its coverage because they are located outside of Illinois." *Id.* at 386. The court found that because the IFDA limits its scope to franchises located within the Illinois, "the Samsung Dealers may not claim its protections." *Id.* Thus, both the Fourth and Seventh Circuits explicitly hold that a state statute's territorial limitations apply even when that state's law is selected by a choice of law provision.

When presented with a similar issue, the Ninth Circuit has adopted and applied the reasoning of the Fourth and Seventh Circuits. *See Gravquick A/S v. Trimble Navigation Int'l Ltd.*, 323 F.3d 1219, 1223 (9th Cir. 2003). In *Gravquick*, a Danish construction company, Gravquick, entered into an agreement with Trimble, a California corporation, whereby Gravquick would act as a distributor of Trimble's products in Denmark. 323 F.3d at 1221. The agreement provided that it would "be governed and construed under the laws of the State of California." *Id.* After Trimble terminated the agreement, Gravquick brought suit in California, alleging that Trimble violated the California Equipment Dealers Act ("CEDA") by refusing to renew the agreement without good cause and proper notice. *Id.* Trimble argued that, although California law governed the agreement, CEDA itself did not apply because Gravquick was located outside of California and the conduct giving rise to suit did not occur in California. *Id.* The court began its analysis by stating, "If a state law does not have limitations on its geographical scope, courts will apply it to a contract governed by that state's law, even if parts of the contract are performed outside of the state." *Id.* at 1223. On the other hand, the court declared, "When a law contains geographical limitations on its application . . . courts will not apply it to parties falling outside those limitations, even if the parties stipulate that the law should apply." *Id.* (*citing Peugeot*, 892 F.2d at 358). The court then examined CEDA and found that it "contains no express geographical limitations as to its application." Therefore, because CEDA "includes no express requirement limiting its protection to dealers located in California," the court held that it could "be applied to an out-of-of state dealer through a choice of law provision in the contract." *Id.*

ORDER – 8

In this case, FIPA limits the scope of its protections to franchise-related conduct occurring "in this state." *See* WASH. REV. CODE §§ 19.100.020, 19.100.070. The legislative history of the Act confirms that the definition for "in this state" was intended to provide a territorial limitation on FIPA's application. As in *Peugeot Motors* and *Cromeens*, the relevant state law contains an "express geographic limitation as to its application," and therefore, "courts will *not* apply it to parties falling outside those limitations, even if the parties stipulate that the law should apply." *Gravquick*, 323 F.3d at 1223 (emphasis added) (*citing Peugeot*, 892 F.2d at 358). When confronted with this issue in *Gravquick*, the Ninth Circuit first looked to the relevant statute and its legislative history to see if there was any evidence of an intent to limit its application. *Id.* Finding none, the court enforced the parties' choice of law provision and applied the state statute. Here, in contrast, FIPA and its legislative history provide ample evidence of an intent to limit the Act's protections to conduct occurring "in this state." The Taylors are located outside of Washington, and no aspect of their franchise agreement or relationship with Got Junk occurred in Washington. Thus, even though the parties agreed Washington law would apply, the Taylors cannot avail themselves of FIPA's protections because the Act, by its own terms, excludes them from coverage. *See Peugeot Motors*, 892 F.2d at 358; *Cromeens*, 349 F.3d at 386; *Cf. Gravquick*, 323 F.3d at 1223.[2]

//

---

[2] In an unpublished decision, the Ninth Circuit has addressed a situation directly analogous to the case at bar. *Fred Briggs Distrib., Inc. v. Cal. Cooler, Inc.*, No. 92-35016, 1993 U.S. App. LEXIS 20732 (9th Cir. August 11, 1993). In *Fred Briggs*, the plaintiff brought suit after the defendant terminated their distribution agreement. *Id.* at *1. The plaintiff sought to invoke the protections of California's Franchise Act, which limits its coverage to franchises that are domiciled or operated "in this state [of California]." *Id.* at *2. The plaintiff argued that the parties' choice of law in the distribution agreement, which stipulated that California law applied, overrode the Act's geographic limitations. *Id.* The court flatly rejected this argument, holding that the Act's limitations "apply in the instant case and bar [the plaintiff] from seeking relief under the Franchise Act." *Id.* at *7. In so holding, the court noted that the Act's domicile requirement was "an express geographic limitation on the applicability of the Franchise Act," and therefore, the court was "bound by the limitations that a state legislature places on the scope of its laws." *Id.* at *2, 4. Although this unpublished case is not precedent, *see* 9th Cir. R. 36-3, it nonetheless further indicates, consistent with *Gravquick*, that the Ninth Circuit gives effect to a state law's geographic limitations even though the parties stipulate that the law of that state applies.

ORDER – 9

The Taylors do not dispute that they entered into a settlement and release agreement with Got Junk under which they agreed to release all claims arising from the failed franchise in exchange for payment of $20,000, an additional $5,000 consulting arrangement, and the right of first refusal on a future franchise. (*See* Taylor 2nd Decl. ¶¶ 4–6 (Dkt. No. 20 at 2) (repeatedly referring to the "settlement with 1-800-Got-Junk").) Got Junk has presented un-rebutted evidence that the Taylors voluntarily entered into a settlement and release agreement that bars their claims in the instant suit. (*See* Termination & Release Agreement (Dkt. Nos. 18-3 at 4 & 15-6 at 2).) The sole argument advanced by the Taylors as to why their suit is not barred by the settlement agreement is based on FIPA's anti-waiver provision, which is inapplicable here because no aspect of the parties' relationship occurred in Washington. FIPA does not apply and the Taylors have presented no other basis under Washington law on which to invalidate their settlement and release agreement with Got Junk. Accordingly, the Taylors have failed to raise an issue of material fact to preclude summary judgment dismissal of their claims.

**IV. CONCLUSION**

For the foregoing reasons, the Court hereby DENIES Plaintiff's Motion for Partial Summary Judgment (Dkt. No. 13) and GRANTS Defendant's Motion for Summary Judgment (Dkt. No. 18). Accordingly, this matter is DISMISSED.

SO ORDERED this 9th day of July, 2009.

John C. Coughenour
UNITED STATES DISTRICT JUDGE

ORDER – 10